UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL ANDREW TALBOT,

                      Plaintiff,

v.                                                             Case No. 3:13-CV-1249 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                      Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

LACHMAN, GORTON LAW FIRM           PETER A. GORTON, ESQ.
 Counsel for Plaintiff
PO Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.            REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Paul Andrew Talbot ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13, 14.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on August 10, 1975. (T. 137.) He completed some college. (T. 166.) Generally, Plaintiff's alleged disability consists of cardiomegaly, degenerative arthritis, scoliosis, asthma, Type 2 diabetes, and hearing loss. (T. 165.) His alleged disability onset date is April 1, 2006, which was amended at the hearing to September 1, 2009. (T. 161, 28.) His date last insured is June 30, 2011. (T. 161.) He previously worked as a cashier, press assistant, and security. (T. 166.)

### B. Procedural History

On March 18, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 137.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 8, 2012, Plaintiff appeared before the ALJ, John P. Ramos. (T. 21-65.) On June 29, 2012, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 6-20.) On August 19, 2013, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 11-16.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2011 and Plaintiff had not engaged in substantial gainful activity since April 1, 2006. (T. 11.) Second, the ALJ found that Plaintiff had the severe

impairments of degenerative disc disease ("DDD") of the lumbar spine, degenerative joint disease ("DJD") bilateral hips, diabetes, and hearing loss. (*Id.*) The ALJ determined that Plaintiff's asthma, knee pain, and mental impairments were non-severe impairments. (T. 12.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 12-13.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform: "a full range of sedentary work; [however], [Plaintiff] should not work in an environment with a consistent noise level higher than moderate as defined in the dictionary of occupational titles. He retains the ability to hear and understand simple and more complex oral instructions and communicate simple and more complex information." (T. 13.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work (T. 14); however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform (T. 15).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially five separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly account for his mental impairments at all steps of the sequential process. (Dkt. No. 13 at 6-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to obtain vocational expert ("VE") testimony. (*Id.* at 12-16.) Third, Plaintiff argues the ALJ failed to properly weigh medical opinion evidence in the record. (*Id.* at 16-20.) Fourth, Plaintiff argues the ALJ erred in his credibility assessment. (*Id.* at 20-21.) Fifth, and lastly, Plaintiff argues the ALJ failed to consider his inability to work on a consistent basis. (*Id.* at 21-22.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ's step two findings were proper. (Dkt. No. 14 at 5-6 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's RFC finding was proper. (*Id.* at 6-9.) Third, and lastly, Defendant argues the ALJ's step five finding was proper. (*Id.* at 9-11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

5

is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ's Step Two Analysis was Proper.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 5-6 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c). The plaintiff bears the burden of presenting evidence establishing severity. *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical

6

evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

Plaintiff argues the ALJ failed to determine his depression, anxiety, and post-traumatic stress disorder ("PTSD") were severe impairments. (Dkt. No. 13 at 6 [Pl.'s Mem. of Law].) As a threshold issue, the ALJ appears to determine that Plaintiff's mental impairments are not medically determinable impairments. (T. 12.) The ALJ stated in his step two analysis that Plaintiff had medically determinable impairments which were non-severe, and listed asthma, knee pain, and mental impairments. (*Id.*) However in the same paragraph the ALJ then states Plaintiff's mental impairments were not diagnosed by an acceptable medical source and therefore they are not a medically determinable impairment. (*Id.*) The record pertaining to Plaintiff's mental health treatment came from a licensed clinical social worker ("LCSW") and under the regulations a LCSW in a not an acceptable source and thus cannot diagnose an impairment. 20 C.F.R. §§ 404.1513, 416.913.

Only acceptable medical sources, as defined by the Regulation, can provide evidence to establish a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). Only medically determinable impairments may be considered severe or non-severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Therefore since there was no diagnosis of a mental impairment, the impairment cannot be classified as a medically determinable impairment and the ALJ does not need to evaluate whether the impairment is severe or not.

7

Plaintiff latches on to a notation from 2005 indicating Plaintiff received medication for a mental health condition as definitive evidence that some acceptable medical source diagnosed him with a mental impairment. (Dkt. No. 13 at 7 [Pl.'s Mem. of Law].) The record did indicate that Plaintiff received Lexapro in 2005, with no other treatment of diagnosis notations attached. (T. 250.)[1] Even if this evidence definitively established a diagnosis of a mental impairment, it alone is not enough to establish a severe impairment. The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

Therefore, the ALJ did not err in his step two analysis of Plaintiff's mental impairment. Plaintiff failed to prove that he had a diagnosed mental impairment from an acceptable medical source; therefore, his mental impairment cannot be deemed a medically determinable impairment. Even if there was a diagnosis from an acceptable medical source, a diagnosis a lone does not establish severity.

**B.      Whether the ALJ's RFC Finding was Proper.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 5-6 [Def.'s Mem. of Law].) The Court adds the following analysis.

**i.)      Mental Impairments**

In addition to arguing the ALJ failed to find Plaintiff's mental impairments severe at step two, the Plaintiff argues the ALJ erred in his assessment of Plaintiff's mental

---

[1] The hand written notation from August 2005 reads "anxiety/depression Lexapro." (T. 250.) Lexapro is used in the treatment of depression and/or anxiety. *See* http://www.fda.gov/downloads/Drugs/DrugSafety/ucm088620.pdf

8

impairments elsewhere in the sequential process. Plaintiff argues the ALJ should have ordered a psychiatric evaluation, essentially arguing the ALJ failed in his duty to develop the record. (Dkt. No. 13 at 10-12 [Pl.'s Mem. of Law].)[2] First, an ALJ is afforded discretion in determining whether a consultative examination is warranted. *See* 20 C.F.R. § 404.1519a. Second, reviewing courts hold that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

Here, there were no obvious gaps in the record that would trigger the ALJ's duty to develop it further. Although the record contained a medical source statement from Plaintiff's treating mental health provider, the record was otherwise void of mental health concerns. Plaintiff did not allege mental health conditions contributed to his disability in his Disability Report. (T. 165.) Outside of the August 2005 notation, the record did not contain any indication Plaintiff received a mental health diagnosis from an acceptable medical source, mental health counseling, or mental health medication. (T. 269, 290, 293, 298, 311, 331, 339, 340, 344, 356, 461, and 462.)[3] There are no gaps in the record, because it is clear from the record Plaintiff did not seek, or receive, treatment for mental health impairments prior to 2011. Therefore, the ALJ was not obligated to develop the record further.

---

[2]  Plaintiff raises this argument within his argument the ALJ erred at step two, for ease of convenience and analysis, this Court addresses the argument here.

[3]  Of note, Plaintiff's mental health treatment did not commence until September 9, 2011, after his date last insured of June 30, 2011. (see T. 234, 161.) Plaintiff's alleged onset is September 1, 2009, yet Plaintiff urges the adoption of a mental health impairment diagnosis based on a vague notation made in 2005. There is no mental health treatment (counseling, diagnosis, or medication) between 2005 and 2009. Further, Plaintiff testified that his mental health issues arose due to his prison stay and he was released in late 2010. (T. 43, 51.)

Plaintiff also argues the ALJ failed to take into consideration the combined effects of his impairments in formulating his RFC determination. (Dkt. No. 13 at 12 [Pl.'s Mem. of Law].) The ALJ held that absent a diagnosis from a medically acceptable source, Plaintiff's mental health impairments could not be considered a medically determinable impairment, and therefore, the impairment need not be considered. (T. 12.) To be sure, an ALJ must consider all the impairments, sever and non-severe, when evaluating a plaintiff's RFC. *See Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995). However, an ALJ is not obligated to take into consideration impairments which are not medically determinable impairments, because only medically determinable impairments can be considered severe or non-severe. 20 C.F.R. §§ 404.1520(c), 416.920(c).[4] Therefore, the ALJ did not commit legal error by failing to provide for limitations in his RFC assessment based on an impairment which was not medically determinable.

### ii.) Weighing of Medical Opinions

The Plaintiff argues the ALJ erred in evaluating the opinion evidence in the record when formulating his RFC analysis, specifically the opinions of Mr. Chalres Kramer, LCSW and Lawrence Weisner, M.D. (Dkt. No. 13 at 9-10, 16-20 [Pl.'s Mem. of Law].)

When analyzing medical opinions the ALJ must take into consideration: (1) the examining relationship, (2) the treatment relationship, (3) supportability of the opinion,

---

[4] Even if the ALJ determined Plaintiff's mental health impairments were medically determinable impairments and non-severe, he did not err in his RFC assessment. In his decision the ALJ thoroughly discussed Plaintiff's alleged mental limitations, the evidence in the record (and lack of evidence in the record) surrounding Plaintiff's mental impairments. The RFC determination did not account for any limitations involving Plaintiff's mental health impairments, because the evidence failed to support additional limitations.

10

(4) consistency of the opinion, (5) specialization of the source, and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, the ALJ afforded "no weight" to the opinion of Mr. Kramer. (T.12.) Mr. Kramer was not an acceptable medical source under the Regulations. 20 C.F.R. §§ 404.1513, 416.913. Only acceptable medical sources can provide a diagnosis an establish an impairment. *Id.* at §§ 404.1513(a), 416.913(a). Sources who are not acceptable medical sources can provide evidence as to how a condition affects a plaintiff, an impairment's severity, the duration of an impairment and functional limitations. *Id.* at §§404.1513(e), 416.913(e). Once again, there was no acceptable medical source to provide a diagnosis of a mental impairment, without a diagnosis the impairment cannot be determined to be a medically determinable impairment, only medical determinable impairments can be considered severe or non-severe, only limitations stemming from severe and non-severe impairments are considered in formulating an RFC. Therefore, the ALJ did not err in affording "no weight" to Mr. Kramer's opinion, because Mr. Kramer's opinion regarding Plaintiff's mental limitations is baseless without an acceptable medical source's diagnosis of a mental impairment.

Plaintiff argues the ALJ erred in affording Dr. Weisner's opinion "less weight." (Dkt. No. 13 at 16-20 referring to T. 14 [Pl.'s Mem. of Law].) Dr. Weisner provided an orthopedic consultative examination of Plaintiff at Plaintiff's request. (T. 317-319.) Dr. Weisner also completed a "Work Capacities" form. (T. 320-323.) Dr. Weisner observed in his examination that Plaintiff was "moderately restricted" for "heavy lifting, pushing, pulling, carrying." (T. 319.) Specifically, Dr. Weisner stated Plaintiff should not push or pull objects greater than 40-50 pounds. (*Id.*) He further observed Plaintiff had no

11

limitations with his upper extremities and "mild limitations" for prolonged standing, sitting and walking. (*Id.*) However, Dr. Weisner placed much more restrictive limitations on Plaintiff in his "Work Capacities" questionnaire. For example, Dr. Weisner opined Plaintiff could only sit for two hours in an eight hour workday and would need to change position every twenty minutes. (T. 320.) Not only are the limitations in the "Work Capacities" questionnaire internally inconsistent, they are not supported by the evidence in the record. Consultative examiner, Pranab Datta M.D., observed mild limitation for prolonged sitting, standing and walking. (T. 259.) Dr. Datta also opined Plaintiff could not perform "heavy lifting, pushing, pulling or carrying." (*Id.*)

The ALJ was correct in affording Dr. Weisner's opinion "less weight," because the ALJ properly reasoned under the Regulations Dr. Weisner was not treating physician. (T. 14.) Further, as shown herein, Dr. Weisner's opinions regarding Plaintiff's limitations were internally inconsistent and not supported by the record. Therefore, the ALJ properly afforded Dr. Weisner's more restrictive limitations "less weight."

### C. Whether the ALJ's Credibility Determination was Proper.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 8-9 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the

credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Plaintiff argues the only evidence the ALJ relied on in making his credibility determination was Plaintiff's criminal record. (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].) To be sure, the ALJ's credibility analysis was sparse, but so was the medical record. The ALJ's credibility determination was nonetheless supported by substantial evidence because he provided enough of a discussion to "enable the court to decide whether there [were] legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270. Contrary to Plaintiff's contention, the ALJ discussed more than Plaintiff's prison sentence in making a credibility determination.

In making a credibility determination, and overall in his decision, the ALJ provided a detailed discussion of the objective medical evidence in the record. The ALJ specifically cited the proper Regulations and factors relating to a credibility analysis. (T. 13-14.) The ALJ discussed objective medical evidence, referenced Plaintiff's activities of daily living, and discussed Plaintiff's testimony (T. 11-14.) Plaintiff's prison term was but on factor the ALJ relied on in making a credibility determination. The ALJ properly exercised his discretion in evaluating the credibility of Plaintiff's testimony and therefore the ALJ's determination is upheld.

**D.     Whether the ALJ's Step Five Determination was Proper.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 9-10 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the

national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Plaintiff argues the ALJ should have called on a VE to testify as to the number of jobs that exist in the national economy which Plaintiff could perform considering Plaintiff's non-exertional limitations imposed by his hearing loss and mental health conditions. (Dkt. No. 13 at 14, 22 [Pl.'s Mem. of Law].)

First, as discussed in Part IV. A-B, the ALJ properly assessed Plaintiff's mental health impairments. Therefore, because the ALJ did not err in his RFC assessment regarding Plaintiff's mental health, the ALJ did not err in determining that the occupational base was not further eroded by non-exertional mental health limitations. Second, contrary to Plaintiff's contention, the ALJ properly assessed Plaintiff's hearing limitations at all steps of the sequential process.

Regarding Plaintiff's hearing loss, the ALJ determined that he retained the ability to "hear and understand simple and more complex oral instructions and communicate simple and more complex instructions" and further he was restricted to a noise level of at most "moderate." (T. 13.) Plaintiff argues the restriction to "hear and understand" is a misunderstanding the Social Security Ruling ("SSR") 96-9p and the ALJ confused hearing with communicating. (Dkt. No. 13 at 15 [Pl.'s Mem. of Law].) However, SSR 96-9p clearly states that sedentary work requires: "[t]he ability to hear and understand

simple oral instructions or to communicate simple information." SSR 96-9P (S.S.A. July 2, 1996). It appears that Plaintiff is arguing that the ALJ's RFC limits his ability to communicate, not his ability to hear. However, a plain reading of the RFC does not support Plaintiff's argument. The RFC clearly states Plaintiff can "hear" instructions and further, the RFC clearly limits Plaintiff to a work environment with a noise level no higher than "moderate." (T. 13.) Plaintiff appears to overlook part of the RFC. The ALJ's RFC properly took into consideration, and accounted for, Plaintiff's hearing limitation.

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605–06. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

SSR 96-9p states that "all work environments entail some level of noise, restrictions on the ability to work in a noisy workplace must be evaluated on an individual basis." A limitation to occupations with a moderate level or less of noise intensity would not so narrow Plaintiff's possible range of work that a VE would be required to testify. "Where a person has a medical restriction to avoid excessive amounts of noise . . . the impact on the broad world of work would be minimal because

most job environments do not involve great noise." SSR 85-15 (S.S.A. 1985). Plaintiff could perform work at the moderate, quiet, and very quiet noise level, he would only be precluded from loud and very loud occupations. SCODICOT, Appendix D. Environmental Conditions. The ALJ properly afforded limitations based on Plaintiff's hearing loss. The ALJ also properly concluded that the occupational base was not so eroded as to require the testimony of a VE. Therefore, remand is not required to obtain testimony from a VE.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 15, 2015
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge